**SECURITIES AND EXCHANGE COM-
MISSION, Plaintiff,**

v.

**KELLY ANDREWS & BRADLEY, INC.,
et al., Defendants.**

**No. 71 Civ. 5469.**

United States District Court,
S. D. New York.

April 25, 1972.

16. 5 U.S.C. § 701 et seq.

Kevin Thomas Duffy, Regional Administrator, New York City, for plaintiff; Paul Chernis, Dennis J. Block, Franklin D. Ormsten, Marc N. Epstein, New York City, of counsel.

George S. Meissner, Brooklyn, N. Y., for defendant Marando.

## OPINION

EDWARD WEINFELD, District Judge.

The Securities and Exchange Commission (Commission) commenced this action against Kelly Andrews & Bradley, Inc. (Kelly Andrews), a registered broker-dealer; Stuart Schiffman, its president and a director; Perry Scheer, its secretary and treasurer, and Fred Miller, a director and its vice president. The complaint charged them with continuing violations of the anti-fraud, net capital, bookkeeping and financial reporting provisions of the Securities Act of 1933 and the Securities Exchange Act of 1934 and rules promulgated thereunder. The Commission sought a temporary restraining order and a preliminary in-

junction pending the final determination of the action.

In addition to the foregoing, a separate charge of fraud was made against Joseph Marando and Schiffman. The specific charge was that Marando, with the aid of Schiffman, removed 44,800 shares of the common stock of Brooklyn Poly Industries, Inc. (Brooklyn Poly) which properly belonged in a subordinated loan account of Kelly Andrews, and that he, Marando, misappropriated the shares to his own use. As to this charge, the Commission requested injunctive relief and an order directing Marando and Schiffman to return the shares.

Upon the filing of the complaint, the Securities Investor Protection Corporation (SIPC), pursuant to the provisions of the Securities Investor Protection Act,[1] applied for an order to liquidate Kelly Andrews in order to protect its customers, and a trustee was duly appointed under an order of this court, issued by Judge Thomas F. Croake, which further temporarily restrained all defendants from a continuation of the conduct alleged in the complaint, and directed Marando to turn over to the trustee the 44,800 shares of Brooklyn Poly pending final determination of this action. With the consent of the defendant Marando, the trustee was joined as a party plaintiff. The motion for a preliminary injunction came on to be heard before this court and an evidentiary hearing was held. In view of the extensive testimony taken at the hearing,[2] the court, pursuant to Rule 65(a) (2) of the Federal Rules of Civil Procedure, ordered the trial of the action on the merits to be advanced and consolidated with the hearing on the motion.

The prime issue, as the evidence developed, is whether the defendant Marando loaned to Schiffman, in or about April or May 1970, 89,000 shares of stock of Brooklyn Poly Industries, to be used by Schiffman as subordinated capital of Kelly Andrews, and as such, available for customers and creditors prior to any claim by Marando, and whether, when Kelly Andrews encountered financial difficulties in October 1971, Marando, aided and abetted by Schiffman, removed 44,800 of such shares from the possession of Kelly Andrews and converted them to his own use.

After examination of my trial notes, a review of the transcript of the trial testimony, consideration of the demeanor of all witnesses, and upon the documentary proof, the court finds that the Commission has sustained its burden of proof. Indeed, were the standard in this civil case the same as that imposed in a criminal case, the proof is sufficient to meet that test. The evidence, both documentary and testimonial, is overwhelming that Marando, pursuant to an agreement entered into by him with Schiffman, made available, delivered and loaned 89,000 shares of Brooklyn Poly stock to Schiffman some time in May 1970, to be used as subordinated capital of Kelly Andrews, and which, together with other capital supplied by or through Miller, served to restore Kelly Andrews' net capital position;[3] that as a result of the aforesaid capital contributions, Kelly Andrews was authorized by the National Association of Securities Dealers to resume its brokerage operations on July 9, 1970; that upon the

---

1. 15 U.S.C. §§ 78aaa–78*lll*.

2. The hearing and trial were held only on the claim against Marando, since the other defendants consented to plaintiff's request for relief pursuant to signed stipulations, except as to Schiffman, who has failed to appear or answer and is in default.

3. Under Rule 15c3–1, promulgated under § 15(c) (3) of the Securities Exchange Act of 1934 and known as the "net capital rule," the ratio of a broker-dealer's aggregate indebtedness to its net assets may not exceed 20 to 1. 17 C.F.R. § 240.15c3–1.

availability of Brooklyn Poly stock from Marando, Schiffman executed a subordination agreement with Kelly Andrews which ran from April 15, 1970 to April 15, 1971, whereby Schiffman subordinated his claim to 50,000 shares of Brooklyn Poly Industries to the claims of all customers and general creditors of Kelly Andrews; that the subordination agreement was filed with the SEC and maintained, pursuant to Rule 15c3–1, in the Commission's public file; that this agreement by Schiffman with Kelly Andrews was renewed and ran from April 15, 1971 to April 15, 1972, but the number of Brooklyn Poly shares subordinated thereunder in favor of creditors with Kelly Andrews was reduced to 44,800; that Marando at all times understood that he delivered and loaned the Brooklyn Poly shares to be used by Schiffman as a subordinated loan to Kelly Andrews for the benefit of its customers and creditors; that his agreement with Schiffman was subsequently memorialized in writing, which was predated to April 15, 1970 (the date of Schiffman's first subordination agreement), which expressly states that the "89,000 shares, or any part thereof, may be used to make a subordinated loan to Kelly Andrews & Bradley, Inc."; that this agreement which was "accepted" by Marando in writing was in effect when Schiffman renewed and filed with the Commission his subordination agreement dated April 15, 1971; that moreover, in April 1971, without the 44,800 shares, Kelly Andrews would not have been in compliance with the net capital rule and would not have been able to continue in business. Performance of the agreement between Marando and Schiffman was guaranteed by individuals associated with Kelly Andrews, and Marando, in addition to receiving 1500 shares of Acrite Industries, Inc. stock, was to and did receive interest for the loan of his shares. Further, it is abundantly established that two days before Kelly Andrews was ordered by the National Association of Securities Dealers to cease business operations because of its failure to meet the requirements of the net capital rule, Marando, aided and abetted by Schiffman, obtained possession of and misappropriated to his own use the 44,800 shares of Brooklyn Poly stock, which immediately before had been pledged to a bank as collateral for a loan to Kelly Andrews and was released by the bank upon the substitution of other collateral by Kelly Andrews.

The argumentative contention that Marando was duped into the transaction by Schiffman and that it was fraudulent is not only without the slightest evidential foundation, but flies in the face of substantial evidence to the contrary. Marando was sophisticated and knowledgeable; his activities at Kelly Andrews in its final days indicated an active role in its affairs; he participated in underwriting and promotional activities there and was conversant with the customs and business practices of the financial world. Moreover, he knowingly participated in a fraudulent scheme on behalf of Kelly Andrews in a fictitious sale of All State Metal Stamping Corporation stock intended to make it appear that Kelly Andrews was in compliance with the net capital rule; and when this fraudulent device failed, Marando, with the aid of Schiffman, late in October 1971, two days before Kelly Andrews was suspended from continuing business operations, removed 44,800 shares of Brooklyn Poly stock which had previously been subordinated under the subordination agreements filed with the Commission by Kelly Andrews.

The defendant's claim that a fraud was perpetrated upon the Commission itself because Schiffman had no proper title to the shares likewise is without substance, since the shares were loaned by him to Schiffman for the express purpose of bringing Kelly Andrews within the required net capital ratio. If there were a fraud practiced upon the Commission by Schiffman, Marando himself was a participant therein and

cannot become the beneficiary of his own wrongful conduct.[4]

■ That the certificates for the shares may not have been issued until late May or early June 1970 is without significance, since Marando's witness testified that Marando's right to the stock accrued as early as November 1969. And while the defendant claims there is no proof he signed the stock powers for the shares, he failed to offer any testimony to negate this. The Commission's proof permits the inference that the defendant signed the stock powers to enable Schiffman and Kelly Andrews freely to pledge the shares as subordinated stock, since that was the very purpose for which the shares were loaned.

■ Entirely apart from the substantial affirmative evidence offered by the Commission to sustain its charges, there is also the fact of defendant's failure to testify to matters peculiarly within his knowledge, such as his signature on the stock powers, the subordination agreement, or of his understanding of its unmistakable language that the Brooklyn Poly shares "may be used to make a subordinated loan to Kelly Andrews Inc." —a failure that permits the inference

that had he testified his testimony would have been adverse to his claims.[5]

■ The misappropriation by the defendant of the 44,800 shares of the Brooklyn Poly stock violated the anti-fraud provisions of section 10(b) of the Exchange Act[6] and Rule 10b–5[7] thereunder. It operated as a fraud upon the customers of Kelly Andrews who purchased stock from or through it or dealt with the firm in reliance upon the integrity of subordination agreements filed with the Commission by Kelly Andrews and that the subordinated shares would be available for their benefit. Whether defendant's misappropriation of the stock is called a device, scheme, artifice or an act, practice or course of business which operates or would operate as a fraud and deceit upon any person, it was a blatant fraud upon Kelly Andrews' customers and creditors, in violation of the statute and the Rule.[8] The defendant's attempt to defeat a decree for lack of subject matter jurisdiction must fail. The use of the mails and instrumentalities of commerce "directly or indirectly" has been established beyond peradventure. The subordination of the Brooklyn Poly stock to Kelly Andrews which was used to permit the latter to resume operations and the agreements in connection therewith that were filed

4. See Glus v. Brooklyn E. Dist. Terminal, 359 U.S. 231, 79 S.Ct. 760, 3 L.Ed.2d 770 (1959); Deitrick v. Greaney, 309 U.S. 190, 196–98, 60 S.Ct. 480, 84 L.Ed. 694 (1940); Dickerson v. Colgrove, 100 U.S. 578, 580–81, 25 L.Ed. 618 (1878); Katz v. Amos Treat & Co., 411 F.2d 1046, 1055 (2d Cir. 1969); Simons v. United States, 333 F.Supp. 855, 866–67 (S.D.N.Y.1971); Miller v. American Tobacco Co., 158 F.Supp. 48 (S.D.N.Y.1957).

5. See, e. g., Local 167, I.B.T. v. United States, 291 U.S. 293, 298, 54 S.Ct. 396, 78 L.Ed. 804 (1934); Bass v. Hutchins, 417 F.2d 692, 698 (5th Cir. 1969); Sahn v. Pagano, 302 F.2d 629, 632 (2d Cir.), cert. denied, 371 U.S. 819, 83 S.Ct. 34, 9 L.Ed.2d 59 (1962); N. Sims Organ &

Co. v. SEC, 293 F.2d 78, 80–81 (2d Cir. 1961), cert. denied, 368 U.S. 968, 82 S.Ct. 440, 7 L.Ed.2d 396 (1962); Charles of the Ritz Distribs. Corp. v. FTC, 143 F.2d 676, 679 (2d Cir. 1944).

6. 15 U.S.C. § 78j(b).

7. 17 C.F.R. § 240.10b–5.

8. See Superintendent of Ins. v. Bankers Life & Cas. Co., 404 U.S. 6, 92 S.Ct. 165, 30 L.Ed.2d 128 (1971); SEC v. Capital Gains Research Bureau, 375 U.S. 180, 195, 84 S.Ct. 275, 11 L.Ed.2d 237 (1963); SEC v. Manor Nursing Centers, Inc., 458 F.2d 1082 (2d Cir. 1972) at 1097, 1098; A. T. Brod & Co. v. Perlow, 375 F.2d 393, 397 (2d Cir. 1967).

with the Commission were the subject of correspondence through the mails between Kelly Andrews and the Commission; Marando made telephone calls in connection with the fraudulent scheme involving All State Metal Stamping Corporation stock; moreover, the resumption of Kelly Andrews' operations after it resumed business in July 1970 was due in part to the subordinated Brooklyn Poly stock and obviously its normal activities thereafter involved the daily use of the telephone, the mailing of confirmations to customers and other brokers, the publishing of quotations in the pink sheets, as well as the regular and constant use of the facilities of interstate commerce.[9]

█ A decree may be entered that Edwin L. Gasperini, the duly appointed trustee of Kelly Andrews, is entitled to possession of the 44,800 shares of Brooklyn Poly stock to be disposed of by him for the benefit of Kelly Andrews' customers and creditors in accordance with the law; said decree shall contain appropriate provisions directing said defendant Marando to execute any and all documents required to vest possession and undisputed title to said shares in the aforesaid trustee, with a further provision that the said defendant Marando and the defendant Schiffman shall pay to the trustee a cash sum representing any loss occasioned by the misappropriation of the said 44,800 shares.

In addition, the decree shall provide for permanent injunctive relief in accordance with the terms of the stipulations entered into by individual defendants (other than Marando) and for the requested permanent injunctive relief against defendants Schiffman and Kelly Andrews, who defaulted in answering the complaint herein.

█ Finally, the decree shall also contain a provision enjoining the defendant Marando from future conduct in violation of the securities acts and rules promulgated thereunder. The showing made by the Commission warrants this relief. Our Court of Appeals has recently set forth the factors to be considered in determining whether a reasonable likelihood exists that past violations of the securities laws are likely to be repeated so that permanent injunctive relief is appropriate.[10] Marando's removal of the Brooklyn Poly stock from the premises of Kelly Andrews occurred when the firm was under close scrutiny due to its financial difficulties. His conduct was devious; also there was evidence of the threatened use of violence by him in connection with the fraudulent All State Metal Stamping Corporation stock transaction; finally, Marando persisted in maintaining that his unilateral seizure of the Brooklyn Poly stock was justified despite the overwhelming evidence that he knowingly and understandingly agreed to its use as a subordinated loan from Schiffman to Kelly Andrews. In the light of the foregoing, an injunction to enjoin likely future transgressions of the securities laws is warranted.

The foregoing shall constitute the Court's Findings of Fact and Conclusions of Law.

9. *See* Schoenbaum v. Firstbrook, 405 F.2d 200, 210 (2d Cir.), aff'd in part, rev'd in part on other grounds, 405 F.2d 215 (2d Cir. 1968) (en banc), cert. denied, 395 U.S. 906, 89 S.Ct. 1747, 23 L.Ed.2d 219 (1969).

10. SEC v. Manor Nursing Centers, Inc., 458 F.2d 1082 (2d Cir. 1972).