SECURITIES AND EXCHANGE COMMISSION, Plaintiff,

v.

SCOTT, GORMAN MUNICIPALS, INC., et al., Defendants.

No. 75 Civ. 4373.

United States District Court, S. D. New York.

Dec. 29, 1975.

William D. Moran, Regional Administrator of the Securities and Exchange Commission, New York Regional Office, New York City, for plaintiff; Harry L. Garmansky, Franklin D. Ormsten, Donald N. Malawsky, Edward Shapiro, Nadine Liebhardt-Kelly, Jason Gettinger, New York City, of counsel.

Schulman Gasarch & Scheichet, P.C., New York City, for defendants Scott Gorman and Kramer; William Davis, New York City, of counsel.

Zissu, Lore, Halper & Robson, New York City, for Weinstein and Ingargiola; Morton S. Robson, New York City, of counsel.

Kaplan, Kilsheimer & Foley, New York City, for Marsh; Dermot G. Foley,

Robert N. Kaplan, New York City, of counsel.

## MEMORANDUM

BONSAL, District Judge.

Plaintiff Securities and Exchange Commission ("SEC") commenced this action against Scott, Gorman Municipals, Inc. ("Scott Gorman"), Kenneth Kramer, Jack Weinstein, Eugene Ingargiola and Raymond Marsh on September 5, 1975. The SEC alleges violations by defendants of section 17(a) of the Securities Act of 1933 ("the 1933 Act"), 15 U.S.C. § 77q(a), and section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) ("the 1934 Act"), and Rule 10b–5, 17 C.F.R. 240.10b–5, promulgated thereunder. The SEC brings this action pursuant to section 20(b) of the 1933 Act, 15 U.S.C. § 77t(b), and section 21(e) of the 1934 Act, 15 U.S.C. § 78u(e), to enjoin these alleged violations. Jurisdiction is predicated on section 22(a) of the 1933 Act, 15 U.S.C. § 77v(a), and section 27 of the 1934 Act, 15 U.S.C. § 78aa.

By order to show cause filed September 5, 1975 the SEC moved for a temporary restraining order and preliminary injunction enjoining Scott Gorman and its four principals, "officers, directors [the defendants herein], nominees, agents, servants, attorneys, successors, and assigns, and those persons in active concert or participation with them" from violating section 17(a) of the 1933 Act and section 10(b) of the 1934 Act and Rule 10b–5 promulgated thereunder. The SEC also seeks an order enjoining the individual defendants, "their agents, employees, servants, depositories, banks and those persons in active concert or participation with them . . . from directly or indirectly, transferring, liquidating, pledging, assigning, or otherwise disposing of any personal assets or property (except for ordinary living expenses) unless allowed by further order by this court."

On September 5, 1975, following oral argument, a temporary restraining order, including the temporary freeze of assets was issued with respect to each of the defendants. This order remains in effect on consent pending disposition of this motion for a preliminary injunction which was heard on September 16, 17, 23, and 24, 1975. At the hearing the SEC called as witnesses George Appoldt, a SEC securities compliance examiner, Richard Bartz, an assistant manager at the First National City Bank, George Schnurr, an assistant vice president in charge of clearing accounts at Chemical Bank ("Chemical"), Morris Grossman, Scott Gorman's accountant as of about April, 1975, five customers who purchased municipal bonds or notes through Scott Gorman, and four former salesmen of Scott Gorman. The individual defendants declined to testify, asserting their fifth amendment privilege against self-incrimination. Richard Rubin, a former Scott Gorman salesman, testified as a witness for defendant Kramer. The other defendants called no witnesses.

From on or about January 1, 1974 to September 2, 1975 Scott Gorman, a New York corporation with offices at 1290 Sixth Avenue, New York, New York, engaged in the business of selling municipal bonds and notes ("securities"). Scott Gorman was registered as a broker/dealer with the State of New York but not with the SEC.[1] Defendant Kramer was the president, a director, 25% shareholder, and "chief operating officer" of Scott Gorman. Defendant Marsh was treasurer, a director, 25% shareholder and officer in charge of the firm's back office. Defendant Ingargiola was the chairman of the Board of Directors, 25% shareholder, and in charge of the New Jersey salesmen. Defendant Weinstein was vice president, a director, 25% shareholder and in charge of the New York salesmen.

On April 22, 1975, following discussions between Marsh and Schnurr, an as-

---

1. Effective December 1, 1975, municipal bond broker/dealers are required to register with the SEC and are subject to the SEC rules and regulations. Securities Act Amendments of 1975, Pub.L. 94–29, §§ 3(3), 13 (June 4, 1975).

sistant vice president of Chemical Bank, Chemical opened a clearing account for Scott Gorman on a six-month trial basis.[2] As part of the agreement creating this clearing account, Marsh signed, on behalf of Scott Gorman, the "Chemical Bank General Loan and Collateral Agreement" whereby Chemical would obtain a lien on all property of Scott Gorman in the event of insolvency or the appointment of a receiver.[3]

On August 18, 1975, upon review of an audited statement of Scott Gorman's financial position as of February 28, 1975 and of an unaudited financial statement covering the six-month period ending June 30, 1975, Schnurr, on behalf of Chemical, notified Scott Gorman that Scott Gorman should make other clearing arrangements. On August 25 and 27, 1975, Schnurr met with Kramer, Marsh, Ingargiola, and others from Scott Gorman, and stated that Chemical intended to terminate the clearing account because Scott Gorman had inadequate working capital and that Chemical's officers believed that they had been misled as to Scott Gorman's true financial condition. On September 2, 1975, before the clearing account was formally terminated, Scott Gorman filed a petition under Chapter XI of the Bankruptcy Law, listing approximately $200,000 in assets and $3.4-million in liabilities. Dkt. No. 75 Bkcy. 1538 (S.D.N.Y.). On September 9, 1975, Judge Werker appointed a receiver. Chemical asserts a lien on the securities in the clearing account.

In connection with Scott Gorman's operating procedures, George Appoldt, a

SEC securities compliance examiner, testified that comparison of Scott Gorman's August 29, 1975 customer account statements and stock records with Chemical's August 29, 1975 list of securities in the clearing account revealed approximately 47 instances where securities recorded by Scott Gorman as having been fully paid for by its customers were being held in the Chemical clearing account. It appears that in 19 of these instances, the settlement date on the customer's purchase was prior to August 1, 1975—more than four weeks before the firm filed in Chapter XI. Testimony at the hearing indicates that defendants violated section 17(a) of the 1933 Act and section 10(b) of the 1934 Act in that Marsh, Weinstein and Ingargiola each made promises of prompt delivery of securities, which promises were not kept; that Marsh stated that fully paid for securities were in the clearing account serving as collateral on the firm's inventory loan; that Marsh and Kramer stated to customers and salesmen of the firm that customers' securities were being placed in safekeeping accounts when no such accounts were created; that each individual defendant knew of the firm's shortage of capital as early as April, 1975 when each borrowed $37,500 to be invested in the firm; that from May through August, 1975, Kramer was actively seeking hundreds of thousands of dollars as additional capital for the firm; and that the individual defendants knew that the firm was weeks behind in its recordkeeping and that the existing records could not be reconciled with records of either the Amalgamated Bank or Chemical, the clearing agents for the firm during 1975.

2. In maintaining a clearing account, Chemical acted as agent for Scott Gorman whereby Chemical financed Scott Gorman's or its customers' purchases of securities by paying the seller in the first instance and then holding the securities in the clearing account as collateral until Chemical received payment and instructions as to delivery from Scott Gorman.

3. The General Loan and Collateral Agreement provides:

"the Bank shall have a lien for all the liabilities of [Scott Gorman] . . . upon all property . . . of any kind, . . .

pledged . . . or otherwise in the possession or control of the Bank for safekeeping or for any other . . . purpose for the account of [Scott Gorman].

"In the event of . . . (b) the insolvency, suspension of usual business, . . . or failure of [Scott Gorman], or (c) the appointment of a receiver, . . . or (e) the filing of a petition in bankruptcy . . . all liabilities of [Scott Gorman] . . . shall forthwith become absolute and due and payable . . ."

*The Applicable Law*

██ Section 17(a) of the 1933 Act and section 10(b) of the 1934 Act essentially proscribe deceptive practices and courses of business in connection with the offer and sale of "securities," which are defined by these statutes to include municipal bonds and notes. *See* 15 U.S.C. §§ 77c(a)(2), 77q(c), 78c(a)(12), 78j(b); *Securities and Exchange Commission*[4] *v. R. J. Allen & Associates, Inc.,* 386 F.Supp. 866, 870–71 (S.D.Fla.1974). *See also Superintendent of Insurance v. Bankers Life & Casualty Co.,* 404 U.S. 6, 12, 92 S.Ct. 165, 30 L.Ed.2d 128 (1971). These provisions "prohibit *all* fraudulent schemes . . . whether the artifices employed involve the garden type variety of fraud or present a unique form of deception. *A. T. Brod & Co. v. Perlow,* 375 F.2d 393, 397 (2d Cir. 1967). To use customers' fully paid for securities as the firm's collateral for loans without the customers' knowledge and authorization is a deceptive course of business. *See Cooper v. North Jersey Trust Co.,* 226 F.Supp. 972, 978 (S.D.N.Y.1964); *SEC v. Lawson,* 24 F.Supp. 360 (D.Md.1938). *See also* Rule 8c–1 and 15c2–1 under the Securities Exchange Act of 1934 (17 C.F.R. §§ 240.8c–1, 15x2–1 (1975)). It is also a deceptive course of business for a dealer to trade in securities while having reason to believe it is insolvent without disclosing this fact to its customers. *See Brennan v. Midwestern United Life Insurance Co.,* 286 F.Supp. 702 (N.D.Ind. 1968), *aff'd,* 417 F.2d 147 (7th Cir. 1969), *cert. denied,* 397 U.S. 989, 90 S.Ct. 1122, 25 L.Ed.2d 397 (1970); *SEC v. C. H. Abraham & Co.,* 186 F.Supp. 19 (S.D.N.Y.1960). *Cf. SEC v. R. J. Allen & Associates, Inc., supra.*

██ The SEC has brought this action pursuant to section 20(b) of the 1933 Act, 15 U.S.C. § 77t(b), and section 21(e) of the 1934 Act, 15 U.S.C. § 78u(e), which each provide that

"[w]henever it shall appear to the Commission that any person is engaged or about to engage in any acts or practices which constitute or will constitute a violation [of the securities laws or rules or regulations thereunder, the SEC may apply to the district court] to enjoin such acts or practices, and upon a proper showing a permanent or temporary injunction or restraining order shall be granted without bond."

Under these statutes the SEC, in order to make a "proper showing", need not prove that irreparable injury will result unless an injunction is granted (*SEC v. Management Dynamics, Inc.,* 515 F.2d 801 (2d Cir. 1975); *SEC v. Broadwall Securities, Inc.,* 240 F.Supp. 962, 967 (S.D.N.Y.1966)), but rather must show that defendants' "past behavior gives indication that without injunctive measures they might again engage in such activities." *SEC v. Management Dynamics, Inc.,* 515 F.2d at 807; *SEC v. Manor Nursing Centers, Inc.,* 458 F.2d 1082, 1100 (2d Cir. 1972). *See SEC v. Keller Corp.,* 323 F.2d 397, 402 (7th Cir. 1963). In enforcement proceedings seeking equitable and prophylactic relief, as in this case, "mere negligence is a sufficient basis for liability". *SEC v. Manor Nursing Centers, Inc.,* 458 F.2d at 1096–97, and cases cited therein; *SEC v. Spectrum,* 489 F.2d 535, 541 (2d Cir. 1973); *SEC v. M. A. Lundy Associates,* 362 F.Supp. 226, 234 (D.R.I.1973). *See Gross v. SEC,* 418 F.2d 103 (2d Cir. 1969).

██ Once the SEC has established a "strong prima facie case to justify the discretionary issuance of the interlocutory restraint" (*SEC v. Boren,* 283 F.2d 312, 313 (2d Cir. 1960)), the burden of showing that there is no reasonable expectation that illegal activities will be repeated shifts to defendants. *SEC v. Culpepper,* 270 F.2d 241, 249–50 (2d Cir. 1959). *Cf. SEC v. Kelly Andrews & Bradley, Inc.,* 341 F.Supp. 1201, 1205 (S.D.N.Y.1972). Also once the court determines that there is a reasonable likelihood of future violations of the securities laws, cessation of the unlawful con-

---

**4.** Hereinafter the "Securities and Exchange Commission" will be cited as "SEC".

duct and defendants' disclaimers of future wrongdoing are not bars to the issuance of an injunction. *United States v. Parke, Davis & Co.*, 362 U.S. 29, 47–48, 80 S.Ct. 503, 4 L.Ed.2d 505 (1960); *SEC v. Management Dynamics, Inc.*, 515 F.2d at 807; *SEC v. Manor Nursing Centers, Inc.*, 458 F.2d at 1100–01; *SEC v. Keller Corp.*, 323 F.2d at 402.

 Since it appears that Scott Gorman was short of capital as early as April, 1975; that the individual defendants each were involved in the daily operation of the firm and knew of this shortage; that the individual defendants knew or in the responsible exercise of their duties as principals of the firm should have known that customers' fully paid for securities were being held in the Chemical clearing account to collateralize the firm's inventory loan; and that thereafter the firm continued to sell securities, the evidence indicates that the individual defendants violated section 17(a) of the 1933 Act and section 10(b) of the 1934 Act, and that there is reasonable likelihood of repetition. Accordingly a preliminary injunction will issue against the individual defendants. Since Scott Gorman has filed in Chapter XI and a receiver has been appointed, the firm is under the supervision of the Court and no purpose will be served in extending the injunction to it.

The evidence indicates that there have been substantial financial losses suffered by customers of Scott Gorman and the firm appears to have insufficient assets free of the Chemical lien to compensate these customers. In order to "insure that [assets] will be available to compensate [these] investors", the Court will issue an order imposing the temporary freeze of the individual defendants' personal assets (except for ordinary living expenses), pending computation of customers' losses and clarification of each defendant's role. *SEC v. Manor Nursing Centers, Inc.*, 458 F.2d at 1105–06; *SEC v. R. J. Allen & Associates, Inc., supra.*

The foregoing constitutes the Court's findings of fact and conclusions of law.

Settle order on notice.