### SECURITIES AND EXCHANGE COMMISSION, Plaintiff-Appellee,

v.

### G. N. VAN HORN, Bert Chesnut and Commercial Capital Corporation, Defendants-Appellants.

### No. 15470.

United States Court of Appeals
Seventh Circuit.

Dec. 14, 1966.

See also 7 Cir., 360 F.2d 856.

John J. Enright, Chicago, Ill., Arvey, Hodes & Mantynband, Chicago, Ill., of counsel, for appellants.

Philip A. Loomis, Jr., David Ferber, Sol., Ellwood L. Englander, Asst. Gen. Counsel, Leonard S. Machtinger, Joan H. Saxer, Attys., S. E. C., Washington, D. C., John I. Mayer, S. E. C., Chicago, Ill., Richard P. Stein, U. S. Atty., Indianapolis, Ind., for appellee.

Before HASTINGS, Chief Judge, MAJOR, Senior Circuit Judge, and CASTLE, Circuit Judge.

MAJOR, Senior Circuit Judge.

This appeal is from an order entered July 12, 1965, by the District Court for the Southern District of Indiana, in an action for an injunction brought by the Securities and Exchange Commission (SEC), pursuant to Sec. 20(b) (15 U.S.C.A. § 77t(b)), alleging violations of Secs. 17(a) and 5(a) and (c) of the Securities Act of 1933 (15 U.S.C.A. § 77q (a) and 15 U.S.C.A. § 77e(a) and (c)) (sometimes referred to as the Act). The order was directed at seventeen defendants (seven firms and ten individuals), of which only Commercial Capital Corporation (CCC), its president, G. N. Van Horn, and its secretary, Bert Chesnut, appeal. (These appellants will be referred to as such to distinguish them from other defendants.) The individual appellants by stock ownership controlled CCC.

The complaint consisted of four counts. Count 1 charged appellants and eleven other defendants with the fraudulent sale of stock of Air and Space Underwriters, Inc. (ASU) under Sec. 17(a); Count 3 charged appellants with the fraudulent sale of CCC stock under the same anti-fraud section, and Count 4 charged appellants with selling and delivering unregistered ASU stock in violation of Sec. 5. Appellants were not named in Count 2, hence it is not here involved.

After a lengthy hearing the District Court (Judge Dillin) made findings of fact, conclusions of law and entered the order under attack, preliminarily enjoining appellants and other defendants.

With minor exceptions, hereinafter noted, appellants take no issue with the findings as made by the District Court.[1] The contentions they advance in the main involve questions of law. For instance, they state as a contested issue:

"Whether alleged violations of the anti-fraud provisions of the Securities Act of 1933 (15 USC Sec. 77q(a)) are preliminary enjoinable when a finding as to scienter or fraudulent intent is explicity omitted and/or there is no evidence to support such a finding."

A resolution of the issue thus posed is controlling as to Count 1. It is also relevant as to Count 3. Further, as to this Count appellants argue that the findings are not supported in certain respects and that the conclusions of the Court are "predicated upon findings of alleged untrue statements and material omissions not within the SEC's claim, as pleaded."

As a further contested issue they state:

"Whether the alleged violation of the registration requirement for stock under the Securities Act of 1933 (15 USC Sec. 77e) is preliminary enjoinable when uncontradicted evidence at injunction hearing shows a prima facie and probable defense and/or the findings of fact do not deal with evidence bearing on defense."

This issue relates only to Count 4. Appellants, as will subsequently be more fully shown, interposed as a defense to this Count that the transactions described therein were exempt under the terms of the Act.

---

1. Appellants' appendix contains only the pleadings, the Court's findings of fact and conclusions of law, and the involved order.

CCC, a securities dealer controlled by the individual appellants, was organized by them in 1960. It was instrumental in organizing ASU, which was incorporated in Indiana May 16, 1963. ASU owned all the stock of Air and Space Manufacturing, Inc. (ASM). These corporations were organized to develop and manufacture gyroplanes. ASU obtained all the property of Peace River Manufacturing Corporation and Umbaugh Aircraft Corporation, corporations in reorganization under Chapter X of the Bankruptcy Act which had previously attempted to develop and manufacture gyroplanes.

In the offering and sale of common capital stock of ASU (Count 1), the Court found that appellants and other defendants made the following material statements, each of which was untrue:

"(a) ASU or ASM has a backlog of orders in excess of 3,000 planes with an estimated value in excess of $40,000,000;

(b) ASU or ASM has a large asset consisting of deposits on gyroplanes;

(c) ASU or ASM is now or shortly will be in mass production of gyroplanes amounting to at least three per day;

(d) ASU or ASM will sell the gyroplanes at an amount less than $14,000 per plane;

(e) ASM owns two patents on parts of the gyroplane;

(f) The design of the plane is protected by an F.A.A. type certificate; and

(g) An F.A.A. type certificate has been issued as to the Model 18-A (untrue until May 4, 1965)."

Referring to the offering and selling of the same stock, the Court found that appellants and other defendants had omitted to state the following material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading:

"(a) ASM is committed to sell one demonstrator gyroplane to each of the approximately 150 gyroplane dealers or distributors at a price of $12,000;

(b) It will cost approximately $15,850 to manufacture each of the 150 demonstrator planes, so that ASM will lose a total of approximately $577,500 in fulfilling its commitments to its dealers.

(c) ASM must supply its dealers with one demonstrator plane each before it can sell any planes for re-sale to the public. As of May 27, 1965 a total of six aircraft had been completed. As of July 7, 1965, a total of 23 aircraft had been completed.

(d) Approximately 20 demonstrator aircraft were paid for in full, and the money expended by previous management. ASM is obliged to spend approximately $300,000 out of current funds to honor these contracts.

(e) Dealers and distributors hold $3,500,000 of ASM 4%, non-cumulative preferred stock. The preferred stock has priority over dividends on the common stock in the amount of $140,000 per year.

(f) All of the assets of ASM are pledged on a loan to Talcott & Co., which loan bears interest of 12% per annum."

Appellants, referring to the findings just quoted, on brief state:

"Fully adequate evidence was adduced to support the Court's finding that the untrue statements and material omissions were uttered or withheld, as the case may be, by defendants involved in various kinds of sales of the stock at various times, including CCC and Van Horn. * * * Repetition of much of the untrue or misleading information by Van Horn and CCC was undisputed. The charge against them, and Chesnut, turns upon the issue of scienter or fraudulent intent."

Thus, we come to the important issue as to whether "scienter or fraudulent intent" must be proven and found as a

prerequisite to the allowance of injunctive relief under Sec. 17(a).[2]

The record indicates that the District Court, without so deciding, was of the view that fraudulent intent was a necessary element of proof under the first clause, having to do with a "device, scheme, or artifice to defraud." Assuming such to be the case, we think it is of no consequence here because the Court expressly held that fraudulent intent was not essential under clauses 2 and 3, and its order was bottomed solely thereon.

Appellants in support of their argument that proof of a fraudulent intent is essential cite three District Court cases, Securities and Exchange Commission v. Glass Marine Industries, Inc., D.C., 208 F.Supp. 727; Securities and Exchange Commission v. Carlton (D.C. Colorado 1939, not reported), and Weber etc. v. C.M.P. Corp. etc., D.C., 242 F. Supp. 321. A reading of these cases reveals that they are distinguishable and furnish scant, if any, support for appellants' contention. We need not dwell on them for the reason that, assuming they support appellants' contention, we are convinced that they are contrary to sound reasoning, as well as the weight of authority. In this connection it is pertinent to note that appellants on brief state:

"The Appellants do not pretend that the issue of scienter as an element in an SEC injunction case is well settled. It has never been settled, to Appellants' knowledge, at an appellate level."

In view of the plain language employed by Congress, it would be presumptuous on our part to hold that the applicability of the clauses involved is dependent on intent to defraud. Not only did Congress fail to include such a requirement, but legislative history indicates that it did so deliberately. An earlier version of the Securities Act of 1933 passed by the Senate[3] would have required that the Commission prove wilfulness and "intent to defraud" even for an injunction. The House version contained no such requirement.[4] In conference, the House version of Sec. 17(a) was adopted[5] and became the law.

In describing the statute, Justice William O. Douglas, then a professor at Yale Law School and later chairman of the Commission, stated:

"Section 17 makes unlawful all schemes to defraud. Likewise it makes unlawful even innocent acts to obtain money or property by means of untrue statements of material facts or omissions to state material facts * *. Furthermore Section 20 gives the Commission power to investigate any violation of the Act and to obtain injunctive relief against such violations. So it is evident that a violation of Section 17 even though innocent would be grounds for such investigation or injunction."[6]

SEC, as did the District Court, relies heavily upon Securities and Exchange Commission v. Capital Gains Research Bureau, Inc., et al., 375 U.S. 180, 84 S. Ct. 275, 11 L.Ed.2d 237, in support of its contention that proof of scienter or intent to defraud was not required. In that case SEC sought an injunction under the Investment Advisors Act of 1940.

2. Sec. 17(a) makes it unlawful for any person in the offer or sale of securities in interstate commerce or by use of the mails, directly or indirectly,
"(1) to employ any device, scheme, or artifice to defraud, or
(2) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
(3) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser."

3. S. 875, 73d Cong., 1st Sess.

4. H.R. 5480, 73d Cong., 1st Sess.

5. H.R.Rept. 152, 73d Cong., 1st Sess.

6. Douglas and Bates, The Federal Securities Act of 1933, 43 Yale L.J. 171, 181–182 (1933). (Cited by the Supreme Court in Securities and Exchange Commission v. Capital Gains Research Bureau, Inc., et al., 375 U.S. 180, 186, footnote 7, 84 S.Ct. 275, 11 L.Ed.2d 237.)

That Act, as the Court points out (page 186, 84 S.Ct. 275) was the last in a series of Acts designed to eliminate certain abuses in the securities industry, and was preceded by the Securities Act of 1933 (the Act here involved). We have read and re-read the opinion and are satisfied that the rationale employed, in holding that SEC was entitled to an injunction, is equally pertinent in the instant situation.

The substance of the opinion is found in headnotes (a) and (e) which, in the interest of brevity, we quote (pages 180, 181 of 375 U.S., page 275 of 84 S.Ct.):

"(a) Congress, in empowering the courts to enjoin any practice which operates 'as a fraud or deceit' upon a client, did not intend to require proof of intent to injure and actual injury to the client; it intended the Act to be construed like other securities legislation 'enacted for the purpose of avoiding frauds,' not technically and restrictively, but rather flexibly to effectuate its remedial purposes.

"(e) Even if respondents' advice was 'honest,' in the sense that they believed it was sound and did not offer it for the purpose of furthering personal pecuniary objectives, the Commission was entitled to an injunction requiring disclosure."

The purpose of the Securities Act, like that of the Investment Advisers Act, is to protect the investor. To that end a heavy responsibility is placed upon a person engaging in the securities business. He must truthfully and without reservation inform the investor of all factors material to the security which he offers. It is no defense to an action for injunction, as appellants urge, that the admittedly false statements were uttered without knowledge or that there was no intention to omit the disclosure of material facts.

We hold, as did the District Court, that under Sec. 17(a) (2) and (3) proof of scienter or fraudulent intent is not essential in a suit for injunctive relief.

Relevant to Count 3, the Court found that in the offer and sale of common and capital stock of CCC, appellants made the following untrue statements of material facts:

"(a) CCC has a valuable asset in its ownership of a large block of ASU stock;

(b) CCC will furnish commercial financing for the purchase of the gyroplane manufactured by ASM;

(c) CCC has a valuable asset in its gyroplane distributorship for Lake and Cook Counties, Illinois."

The Court also found in connection with the offer and sale of such stock that appellants omitted to state the following material facts necessary to make the statements made, in the light of the circumstances under which they were made, not misleading:

"(a) At present ASM has the capability of manufacturing not more than one gyroplane per day;

(b) CCC does not have any form of a signed agreement with ASM or ASU entitling it to furnish the commercial financing for the purchase of the gyroplane manufactured by ASM;

(c) CCC does not have sufficient assets to become the 'GMAC' for ASM even if ASM ever should be able at some future date to produce gyroplanes on a mass production basis.

(d) The gyroplanes will be sold to the public by dealers throughout the United States and foreign countries, and not by ASU or ASM directly. CCC has no financing agreement with any of such dealers.

(e) CCC did not pay any cash for its distributorship of gyroplanes for Lake and Cook Counties and its ownership of this distributorship is being contested because of the allegation that the area had already been sold to another distributor."

The issue of scienter or intent to defraud is raised as to the sale of this stock

as it was as to the sale of ASU stock. The ruling of the District Court was the same in each instance, with which we agree for reasons heretofore stated.

Appellants do not dispute that the representations which the Court found to be false were made. They attack such findings, however, generally on the basis that some of them were not adequately supported by proof and others were inconsistent with or exceeded the scope of the allegations contained in the complaint. To follow appellants' rather specious argument in this respect would unduly prolong this opinion and in the end serve no useful purpose. It is sufficient, we think, that we have carefully considered their argument in connection with the proof and hold that there was a sound basis for the findings as made.

Count 4 charged appellants and other defendants with a failure to register in connection with their sale of ASU stock, as required by Sec. 5 (15 U.S.C.A. § 77e). Non-registration is conceded.

Appellants pleaded as a second defense "that any and all offers and sales of securities complained of as to them in Count IV were transactions exempt from Sec. 5 of the Securities Act of 1933," and as a third defense "that any and all securities allegedly sold by them as complained of in Count IV were securities exempt from Sec. 5 of the Securities Act of 1933." "Exempted transactions" are enumerated in Sec. 4(77d) and fall into four categories. "Exempted securities" are enumerated in Sec. 3(77c) and fall into eleven categories. Appellants did not specify which exemption was relied upon either as to the transactions or the securities involved.

From the argument made on brief it appears, with not too much certainty, that they contend they were "person[s] other than an issuer, underwriter, or dealer," and exempt under Sec. 4, and that the involved securities were "a part of an issue offered and sold only to persons resident within a single State * * *," and exempt under Sec. 3(77c (11)).

In Securities and Exchange Commission v. Ralston Purina Co., 346 U.S. 119, page 126, 73 S.Ct. 981, page 985, 97 L.Ed. 1494, the Court held that one who claimed an exemption carried the burden of proof, and stated:

"Keeping in mind the broadly remedial purposes of federal securities legislation, imposition of the burden of proof on an issuer who would plead the exemption seems to us fair and reasonable."

The Second Circuit, in Gilligan, Will & Co. v. Securities and Exchange Commission, 267 F.2d 461, 466, referring to Ralston Purina, stated:

"First, it held that an issuer who claims the benefit of an exemption from § 5 for the sale of an unregistered security has the burden of proving entitlement to it."

The same Circuit, in Securities and Exchange Commission v. Culpepper etc., 270 F.2d 241, 246, again held, citing Ralston Purina:

" * * * that the burden is on a broker-dealer to prove his claimed exemption from the provisions of the Act * * *."

Appellants on their main brief fail to recognize that the burden was on them to establish the right to an exemption. In fact, the tenor of their argument is that they were not required to do so. Referring to the exemption defense, they state that the evidence "shows a prima facie and probable defense," and "It is submitted that no prima facie showing sufficient to support a preliminary injunction was found, or could be found, in face of the undisputed facts indicating the exemption." Evidently these contentions, if valid, do not entitle them to an exemption.

Appellants on reply brief for the first time state, "Appellants concede that under the teaching of S. E. C. [Securities and Exchange Commission] v. Ralston Purina Co., 346 U.S. 119, 73 S.Ct. 981, 97 L.Ed. 1494 (1953), they have the burden of raising by pleading and evidence the

existence of any applicable exemptions from registration." After having thus belatedly recognized their burden, they continue to ignore it. For instance, referring to the claimed exemption under Sec. 3, they state, " * * * the undisputed proof tends to show the stock in the out of state sales directed to Shelby by CCC was part of an exempt issue * *."

The Court in its conclusions of law stated that appellants as well as other defendants, and each of them, "did not and do not have an exemption * * *." Appellants claim that this conclusion cannot stand because of the Court's failure to make findings specifically related to the exemption defense. While such a failure might be fatal under some circumstances, we do not so regard it in the present situation. In the first place the exemption issue is one of ultimate fact, as well as a conclusion. Timetrust, Inc. et al. v. Securities and Exchange Commission, 9 Cir., 130 F.2d 214, 220; Featherstone v. Barash, 10 Cir., 345 F.2d 246, 251. Moreover, appellants, so far as we are aware, made no request for findings specifically related to their claimed exemptions. Hoff v. United States, 10 Cir., 268 F.2d 646, 647.

The Court, as previously set forth, made findings that appellants and other defendants made material untrue statements in the sale of the capital stock of ASU. In view of those findings alone, conceded by appellants to be true, it is not discernible how they with any plausibility can contend that they were "persons other than an issuer, underwriter, or dealer, so as to be entitled to a Sec. 4 exemption."

 Sec. 2(77b) defines the terms employed in the Act, including "underwriter." Paragraph 11 states:

"The term 'underwriter' means any person who has purchased from an issuer with a view to, or offers or sells for an issuer in connection with, the distribution of any security, or participates or has a direct or indirect participation in any such undertaking, or participates or has a participation in the direct or indirect underwriting of any such undertaking * * *."

Thus, the statutory definition specifically covers every person who participates in a distribution of securities. See Securities and Exchange Commission v. Culpepper, 2 Cir., 270 F.2d 241, 246; Securities and Exchange Commission v. Chinese Consol. Benev. Ass'n., Inc., 2 Cir., 120 F.2d 738, 741. In the latter case, referring to the Sec. 4 exemption, the Court stated:

"It does not in terms or by fair implication protect those who are engaged in steps necessary to the distribution of security issues. To give Section 4(1) the construction urged by the defendant would afford a ready method of thwarting the policy of the law and evading its provisions."

The same reasoning is pertinent to appellants' claimed right to exemption under Sec. 4.

We think no purpose can be served in a detailed discussion of appellants' profuse argument relative to their claimed Sec. 3 exemption. As already shown, they participated, both directly and indirectly, in the sale of ASU stock, and it is undisputed that a considerable amount of such stock was sold to out of state residents. In brief, it appears to be their theory that they were not required to register because their participation in the sale of such stock was through a third party, Shelby Securities Co., and in any event there was a lack of proof that it was sold in interstate commerce.

 No case called to our attention supports this argument. On the contrary, it has been held that Sec. 3(a) (11) applies only if all of the issue is offered and sold to persons within the single state where the issuer is located. Thus, appellants would not be entitled to the exemption if they participated, directly or indirectly, in the sale of ASU stock, as they undoubtedly did, a portion of which was sold or transferred interstate. See Securities and Exchange Commission v. Hillsborough Investment Corp., D.C., 176 F.Supp. 789, affirmed 1 Cir., 276 F.2d

665. The Circuit Court in the case just cited made the pertinent observation (page 668):

"Under the statutory scheme as construed, an entire issue must be sold only to residents or the exemption is lost, and once the exemption is lost, the use of interstate facilities in any sale, to resident or non-resident without registering the security is a violation of the Act."

In our judgment, this case was well tried and properly decided. Certainly we are not persuaded that any error was committed which requires a reversal.

The order appealed from is, therefore, Affirmed.