**SECURITIES AND EXCHANGE COMMISSION, Plaintiff,**

v.

**U.S. ENVIRONMENTAL, INC., Castle Securities Corp., Mark J. D'Onofrio, Ramon N. D'Onofrio, Louis J. Sepe, Ernest Micciche, Mark A. Geller, Michael T. Studer, John Romano, Leslie S. Roth, and Dudley Mihran Freeland, Defendants,**

**and**

**Maria SEPE, Relief Defendant.**

**No. 94 Civ. 6608 (PKL).**

United States District Court, S.D. New York.

Aug. 24, 1995.

**118**

Clark S. Abrams, Securities and Exchange Commission New York City, for S.E.C.

Ronald E. DePetris, DePetris & Bachrach New York City.

Dominic F. Amorosa, Woolworth Building, New York City, for Louis J. Sepe.

John E. Lawlor, Garden City, NY, for Castle Securities Corp., Michael T. Studer, and Leslie S. Roth.

Mark A. Geller, Pacific Palisades, CA, pro se.

Ernest Micciche, Vorhees, NJ, pro se.

Dudley Mihran Freeland, Lakewood, CA, pro se.

### MEMORANDUM ORDER

LEISURE, District Judge:

This is an action for federal securities laws violations. The Securities and Exchange Commission (the "Commission") alleges that defendants participated in schemes to defraud relating to U.S. Environmental ("USE") stock. According to the Complaint, the alleged fraudulent schemes had several different aspects, including misrepresentations relating to a "blind pool" public offering of the stock of Windfall Capital Corporation ("Windfall"); fraud relating to the merger of Windfall with USE (the merger was allegedly prearranged and the offering controlled); misrepresentations relating to USE in filings with the SEC, press releases, and other documents disseminated to the public; manipulation of the market for USE stock; fraudulent sale of USE stock to the public at manipulated prices; fraudulent transactions relating to restricted stock of USE; and concealment of fraudulent conduct. Defendant John Romano ("Romano") was a trader at defendant Castle Securities Corp., a broker-dealer whose business is alleged to have consisted principally of retail securities brokerage, underwriting, and market making activities. Romano is named in the First, Third, Fifth and Sixth Claims For Relief, and is alleged to have participated in those aspects of the schemes concerning manipulation of the market for USE stock and fraudulent sale of USE stock to the public at manipulated prices.

Romano has moved to dismiss the Complaint as against him for failure to state a claim upon which relief can be granted, see Fed.R.Civ.P. 12(b)(6), and for failure to plead fraud with particularity, see Fed.R.Civ.P. 9(b). For the reasons stated below, the motion is granted in part and denied in part.

### DISCUSSION

Dismissal under Rule 12(b)(6) is proper only if, "accept[ing] as true the material facts alleged in the complaint and draw[ing] all reasonable inferences in plaintiff's favor ... 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Kaluczky v. City of White Plains,* 57 F.3d 202, 206 (2d Cir.1995) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957)) (citation omitted). Rule 9(b) "permits plaintiffs to allege fraudulent intent generally while the circumstances amounting to fraud must be averred 'with particularity.'" *Powers v. British Vita, P.L.C.,* 57 F.3d 176, 184 (2d Cir.1995). Mindful of these standards, the Court takes up in turn the Commission's various claims for relief against Romano.

### I. The First Claim For Relief.

■ The Commission's First Claim For Relief (Complaint ¶¶ 1–130) alleges that Romano and several other defendants conspired to violate Sections 5(a) and (c) and 17(a) of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. §§ 77e(a), (c), 77q(a), and Section 10(b) of the Securities Exchange Act (the "Exchange Act"), 15 U.S.C. § 78j(b), and Rules 10b–5 and 10b–6 thereunder, 17

C.F.R. §§ 240.10b–5, 240.10b–6.[1] Romano argues that the Supreme Court's decision in *Central Bank, N.A. v. First Interstate Bank, N.A.,* —— U.S. ——, 114 S.Ct. 1439, 128 L.Ed.2d 119 (1994), forecloses the Commission from pursuing this theory of liability. The Court agrees.

In *Central Bank,* the Court held that there is no private cause of action for aiding and abetting a Rule 10b–5 violation. *Id.,* 114 S.Ct. at 1455. However, as the *Central Bank* dissent pointed out, the Court's reasoning was more expansive, supporting an extension of the holding to actions brought by the Commission, as well as private parties, *see id.,* 114 S.Ct. at 1460 ("The majority leaves little doubt that the Exchange Act does not even permit the *Commission* to pursue aiders and abettors in civil enforcement actions under § 10(b) and Rule 10b–5.") (Stevens, J., dissenting) (emphasis in original) (citation omitted), and to other forms of secondary liability, such as civil conspiracy, as well as aiding and abetting, *see id.,* 114 S.Ct. at 1460 n. 12 ("The Court's rationale would sweep away the decisions recognizing that a defendant may be found liable in a private action for *conspiring* to violate § 10(b) and Rule 10b–5.") (Stevens, J., dissenting) (emphasis in original) (collecting authorities).

The Court reasoned, in particular, that "the text of the statute controls" the scope of prohibited conduct under § 10(b). *Id.,* 114 S.Ct. at 1446; *see also Central Bank,* 114 S.Ct. at 1447 (" '[t]he ascertainment of congressional intent with respect to the scope of liability created by a particular section of the Securities Act must rest primarily on the language of that section.' ") (quoting *Pinter v. Dahl,* 486 U.S. 622, 653, 108 S.Ct. 2063, 2081, 100 L.Ed.2d 658 (1988)). This reasoning requires that the Commission's First Claim for Relief be dismissed with prejudice, pursuant to Rule 12(b)(6). The Commission is authorized to bring an enforcement action, only in the event of an imminent or actual "violation" of the Securities Acts, *see* 15 U.S.C. § 77t(b), (d) (Securities Act); 15 U.S.C. § 78u(d) (Exchange Act); and the Commission has failed to identify any statutory text that makes it a (civil) *violation* of the Securities Acts (or of federal law more generally) *to conspire* to violate any one or all of the substantive provisions of the Securities Acts at issue here. Under the reasoning of *Central Bank,* the Commission's failure in this regard is dispositive. *See In re Glenfed, Inc. Securities Litigation,* 60 F.3d 591 (9th Cir.1995) ("The Court's rationale [in *Central Bank* ] precludes a private right of action for conspiracy liability."); *In re Syntex Corp. Securities Litigation,* 855 F.Supp. 1086, 1098 (N.D.Cal.1994) ("The Court's rationale in *Central Bank of Denver* also forecloses [a private civil] conspiracy liability theory. Section 10(b) is silent as to conspiracy liability and there is no provision in the securities statutes authorizing a private cause of action for such conduct. Moreover, that other statutes contain express provisions imposing liability for conspiracy suggests that Congress did not intend § 10(b) to do the same.") (citing Act of Mar. 4, 1990, § 37, 35 Stat. 1096, *as amended,* 18 U.S.C. § 371 (criminal conspiracy statute)); Packers and Stockyards Act, 1921, ch. 64 § 202, 42 Stat. 161, *as amended,* 7 U.S.C. § 192(f), (g) (civil conspiracy provision).

The Commission argues that, "because the Complaint alleges that each of the conspirators was personally involved in a plan or scheme relating to USE securities, and acted with scienter, the First Claim For Relief adequately pleads that the coconspirators are primarily liable for the violations." Memorandum of Law in Opposition to Defendant Romano's Motion to Dismiss the Complaint ("Opp. Mem."), at 20. The Court disagrees. To state a claim of primary liability against a defendant for a violation of the Securities Acts, under the reasoning of *Central Bank,* one must allege that the defendant actually violated a provision of the Securities Acts. *See Central Bank,* —— U.S. at ——, 114 S.Ct. at 1455 ("Any person or entity ... who employs a manipulative device or makes a material misstatement (or omission) on which a purchaser or seller of securities relies may

---

**1.** The Court will refer to the Securities Act and the Exchange Act, collectively, as the Securities Acts.

be liable as a primary violator under 10b–5, assuming *all* of the requirements for primary liability under Rule 10b–5 are met.") (emphasis in original). The defendant's "personal involvement in a scheme or plan" to violate the Securities Acts, without more, is insufficient.

The Commission points out that the Supreme Court has recognized an implied private right of action for civil conspiracy under a provision of the Commodity Exchange Act. *See Merrill Lynch, Pierce, Fenner & Smith Inc. v. Curran,* 456 U.S. 353, 394, 102 S.Ct. 1825, 1847, 72 L.Ed.2d 182 (1982). This observation is correct but unavailing. The Court was aware of the holding in *Curran* when it decided *Central Bank, see —— U.S. at —— n. 9, 114 S.Ct. at 1459 n. 9 (Stevens, J., dissenting); but, as described above, the import of the Court's analysis in *Central Bank* for claims such as the First Claim For Relief is clear, and contrary to the Commission's position. *See In re Glenfed, supra; In re Syntex, supra.*

The Commission also seeks to distinguish civil conspiracy from aiding and abetting liability, on the ground that "the policy concerns expressed by the *Central Bank* majority [about aiding and abetting liability] are not present in the context of civil conspiracy." Opp. Mem. at 22. This argument, however, misperceives the role assigned to "policy considerations" in the *Central Bank* opinion. The normative concerns that the Court expressed in *Central Bank* about aiding and abetting liability were offered in response to the "various policy arguments" that the Commission had made to support a civil aiding and abetting cause of action. *See Central Bank, —— U.S. at —— ——— ———,* 114 S.Ct. at 1453–54. The Court's first answer to these arguments was that:

> Policy considerations cannot override our interpretation of the text and structure of the [Exchange] Act, except to the extent that they may help to show that adherence to the text and structure would lead to a result 'so bizarre' that Congress could not have intended it.

*Id.,* 114 S.Ct. at 1453–54. Only after so stating did the Court describe ways in which imposing a civil action for aiding and abetting

could thwart the achievement of policy goals underlying the Securities Acts. *Id.,* 114 S.Ct. at 1454; *see also id.,* 114 S.Ct. at 1448 ("The issue . . . is not whether imposing private civil liability on aiders and abettors is good policy but whether aiding and abetting is covered by the statute.").

The Commission argues that it would be "bizarre" if the Attorney General could obtain a criminal conviction against one who aids and abets a criminal violation of the Securities Acts, *see* 18 U.S.C. § 2; 15 U.S.C. § 77x (establishing criminal liability for any willful violation of the Securities Act); 15 U.S.C. § 78ff (establishing criminal liability for any willful violation of the Exchange Act), but the Commission could not obtain a civil injunction against the aider and abettor. Similarly, the Commission argues that it would be "bizarre" if the Commission could obtain an injunction against a primary (civil) violator of the Securities Acts, but not against an aider and abettor. These arguments are unpersuasive. Congress has provided that the Commission may seek injunctive relief when it appears that any person is engaged or about to engage in a violation of the Securities Acts. *See* 15 U.S.C. § 77t(b); 15 U.S.C. § 78u(d). In cases where the Commission properly obtains an injunction against a primary violator, the Commission may effectively enjoin an aider and abettor as well, by providing the aider and abettor with actual notice of the injunction. *See* Fed.R.Civ.P. 65(d) ("Every order granting an injunction and every restraining order . . . is binding only upon the parties to the action, their officers, agents, servants, employees, and attorneys, *and upon those persons in active concert or participation with them who receive actual notice of the order. . . .*") (emphasis added). Moreover, Congress has expressly established criminal liability for aiding and abetting a federal crime, *see* 18 U.S.C. § 2, but has expressly limited the Commission's authority to seek an injunction to circumstances amounting to imminent or actual "violations" of the Securities Acts. *See* 15 U.S.C. § 77t(b); 15 U.S.C. § 78u(d). Congress was not unmindful of the relationship between the Attorney General's criminal enforcement powers and the Commission's

equitable enforcement powers when it drafted the statutory language that provides the Commission's enforcement authority. *See* 15 U.S.C. § 77t(b) (Securities Act: providing that, in addition to instituting an action for injunctive relief against imminent or actual violations of the Securities Act, the Commission may transmit evidence of imminent or actual violations to the Attorney General for possible criminal enforcement); 15 U.S.C. § 78u(d)(1) (Exchange Act: same). The Commission therefore has not identified a result so bizarre that Congress could not have intended it.

The First Claim For Relief is dismissed with prejudice for failure to state a claim upon which relief can be granted.

## II. The Third, Fifth and Sixth Claims For Relief.

■ The Commission's Third Claim For Relief (Complaint ¶¶ 1–122, 135–38) seeks to allege that Romano violated Section 17(a) of the Securities Act, and Section 10(b) of the Exchange Act and Rule 10b–5 thereunder (the "antifraud provisions"), by participating in a manipulation of the market for USE securities. There is no dispute that Section 9 of the Exchange Act, 15 U.S.C. § 78i, expressly prohibits manipulative trading practices, including wash sales and matched orders, in stocks listed on national securities exchanges; nor is there any dispute that the antifraud provisions prohibit these practices in over-the-counter securities, such as USE. Instead, the issue is whether the Complaint alleges, in substance and with particularity, that Romano engaged in these prohibited practices, with the requisite scienter,[2] in USE securities. The Court finds that it does not.

**2.** Section 17(a) does not require scienter. *See Finkel v. Stratton Corp.,* 962 F.2d 169, 174 (2d Cir.1992).

**3.** The Commission's Memorandum of Law in Opposition to Romano's Motion to Dismiss the Complaint contains allegations not set forth in the Complaint. These allegations, of course, are not properly considered on a motion to dismiss. The Court expresses no view on whether a complaint amended to include these allegations could survive a motion to dismiss on the grounds set forth by Romano.

The Third Claim For Relief summarily alleges that Romano violated the antifraud provisions, "as more fully described" in preceding paragraphs of the Complaint. *See* Complaint ¶ 137; *see also id.* ¶ 136 ("As a result of the conduct described above ..."). However, the preceding paragraphs of the Complaint that are incorporated by reference into the Third Claim For Relief (¶¶ 1–122) nowhere allege that Romano engaged in any manipulative practice with respect to USE securities.[3] Rather, they allege that *"the D'Onofrio group* [of which the Commission does not allege Romano was a member] engaged in manipulative devices ... referred to as 'wash sales' and 'matched orders.' "* Complaint ¶ 82 (emphasis added). As a result, the Third Claim For Relief is dismissed without prejudice, as against Romano, for failure to state a claim upon which relief can be granted, *see In re American Express Shareholder Litigation,* 39 F.3d 395, 400 n. 3 (2d Cir.1994) ("[C]ourts do not accept conclusory allegations on the legal effect of the events plaintiff has set out if these allegations do not reasonably follow from his description of what happened.") (citations and internal quotation marks omitted), and for failure to plead fraud with particularity.

■ The Commission's Fifth Claim For Relief (Complaint ¶¶ 1–122, 142–145), adequately alleges, for purposes of Rule 12(b)(6), that Romano violated Sections 5(a) and (c) of the Securities Act, by using the mails or facilities of interstate commerce to sell USE securities when no registration statement was filed and in effect as to those securities. *Compare, e.g., Swenson v. Engelstad,* 626 F.2d 421, 424–25 (5th Cir.1980) *with* Complaint ¶¶ 94, 143–44.[4] Moreover, assuming

**4.** The Commission argues, incorrectly in the Court's view, that §§ 5(a) and (c) impose primary liability on anyone who is " 'a "necessary participant" and "substantial factor" in the ... offer or sale of unregistered securities.' " *See* Opp. Mem. at 11 (quoting *SEC v. Holschuh,* 694 F.2d 130, 139–40 (7th Cir.1982) (citation omitted); *SEC v. Van Horn,* 371 F.2d 181, 188 (7th Cir.1966) (citation omitted)). As Romano points out, the Supreme Court has rejected this standard for primary liability as overbroad. *See Pinter v. Dahl,* 486 U.S. 622, 648–54, 108 S.Ct. 2063, 2079–82, 100 L.Ed.2d 658 (1988) (holding that a

**122**

*arguendo* that allegations under §§ 5(a) and (c) may be subject to Rule 9(b)'s particularity requirements whenever, as Romano argues is the case here, the "nub of the violation involves fraud," Opp. Mem., at 14 n. 2, Romano has not identified any deficiency in the Complaint's particularization of the alleged frauds surrounding the merger of USE and Windfall and the initial offering of Windfall stock.[5] Romano's motion to dismiss the Fifth Claim For Relief is therefore denied.

 The Commission's Sixth Claim For Relief (Complaint ¶¶ 1–122, 146–50), adequately alleges, for Rule 12(b)(6) purposes, that Romano violated Section 10(b) of the Exchange Act and Rule 10b–6 thereunder, by bidding for or purchasing USE stock, or inducing other persons to purchase USE stock, or both, before his participation in the distribution of USE stock to the public was completed. *Compare* 17 C.F.R. 240.10b–6 *with* Complaint ¶ 147. However, the Sixth Claim For Relief does not allege this violation with the specificity required by Rule 9(b). Rather, the Sixth Claim For Relief merely lumps Romano together with other defendants as having violated Rule 10b–6, providing no detail as to such matters as Romano's participation in the distribution or the instances on which he bid for, purchased, or induced others to purchase USE stock while a participant. The Sixth Claim For Relief is therefore dismissed without prejudice, as against Romano, for failure to plead fraud with particularity.

## CONCLUSION

The First Claim For Relief is HEREBY DISMISSED WITH PREJUDICE for failure to state a claim upon which relief may be granted. The Third Claim For Relief is HEREBY DISMISSED WITHOUT PREJUDICE for failure to state a claim upon which relief may be granted and for failure to plead fraud with particularity. The Sixth Claim For Relief is HEREBY DISMISSED WITHOUT PREJUDICE for failure to plead fraud with particularity. Romano's motion to dismiss the Fifth Claim For Relief is HEREBY DENIED.

The Commission may file an amended complaint within 60 days from the date of this Order.

**SO ORDERED.**

___

seller is one who solicits securities sales for financial gain). However, although Romano is correct on this legal point, he is not thereby entitled to dismissal of the Fifth Claim for Relief, because the Commission has adequately alleged that Romano solicited sales of USE securities for financial gain.

**5.** Although Romano apparently argues that the Complaint fails to particularize facts from which one could infer his knowledge of these alleged frauds, *see, e.g.,* Romano Mem. at 10 n. 1, he does not dispute that §§ 5(a) and (c) "do[] not require a showing of fraudulent intent." Romano Mem. at 14 n. 2.