**SECURITIES AND EXCHANGE COMMISSION, Plaintiff,**

v.

**U.S. ENVIRONMENTAL, INC., et al., Defendants.**

No. 94 Civ. 6608 (PKL).

United States District Court, S.D. New York.

June 18, 1996.

Richard H. Walker, SEC, New York City, for Securities & Exchange Commission.

John E. Lawlor, Garden City, NY, for Castle Securities Corp., Michael T. Studer, Leslie S. Roth.

Dominic F. Amorosa, New York City, Theresa L. Sepe, Moorestown, NJ, for Louis J. Sepe.

Ernest Micciche, Voorhees, NJ, pro se.

Miles R. Carlsen, Carlsen & Kierstead, Santa Monica, CA, for Dudley Mihran Freeland.

Theresa L. Sepe, Moorestown, NJ, for Maria Sepe.

## MEMORANDUM ORDER

LEISURE, District Judge:

Before the Court is defendant John Romano's motion to dismiss claims in the Amended Complaint pursuant to Fed.R.Civ.P. 9(b) and 12(b)(6). Specifically, Romano moves to dismiss (i) plaintiff's third claim for relief—that Romano violated § 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b–5 promulgated thereunder by manipulating the market for U.S. Environmental ("USE") stock—for failure to state a claim and for failure to plead fraud with particularity; and (ii) plaintiff's sixth claim for relief—that Romano violated § 10(b) of the Exchange Act and Rule 10b–6 promulgated thereunder by purchasing or bidding on a security while he was a participant in the distribution of that security—for failure to plead fraud with particularity. For the reasons stated below, the motion to dismiss is granted as to plaintiff's third claim for relief and denied as to plaintiff's sixth claim for relief.

## BACKGROUND

This is an action for federal securities laws violations. The Securities and Exchange Commission (the "SEC") alleges that defendants participated in schemes to defraud relating to USE stock. Romano was a trader and registered representative at defendant Castle Securities Corp. ("Castle"), a broker-dealer whose business is alleged to have consisted principally of retail securities brokerage, underwriting, and market-making activities. Romano was named in the first, third, fifth, and sixth claims for relief in the original Complaint. The Court, by Memorandum Order dated August 24, 1995, granted Romano's motion to dismiss plaintiff's first, third, and sixth claims for relief. *See S.E.C. v. U.S. Environmental, Inc.,* 897 F.Supp. 117 (S.D.N.Y.1995) (Leisure, J.). The Court dismissed plaintiff's first claim for relief—that Romano and others conspired to violate various securities laws—with prejudice. The Court dismissed the third and sixth claims for relief, but granted plaintiff leave to replead. Plaintiff filed its Amended Complaint on October 20, 1995, and Romano again moved to dismiss.

## DISCUSSION

I. *Romano's Motion to Dismiss Third Claim (Manipulation in Violation of Rule 10b–5) Based on Fed.R.Civ.P. 12(b)(6)*

The third claim for relief alleges that Romano violated Rule 10b–5, 17 C.F.R.

§ 240.10b–5, by manipulating the market in USE stock, by executing trades that were wash sales [1] at the direction of defendant Mark D'Onofrio ("D'Onofrio"), with knowledge or with reckless disregard of the fact that the trades were manipulative. Romano moves to dismiss, pursuant to Fed.R.Civ.P. 12(b)(6), on the grounds that the Amended Complaint, and the Complaint before it, at most state a claim for aiding and abetting manipulation, which the Supreme Court has recently ruled is not actionable under § 10(b) of the Exchange Act. *See Central Bank of Denver v. First Interstate Bank of Denver, N.A.,* 511 U.S. 164, ——, 114 S.Ct. 1439, 1448, 128 L.Ed.2d 119 (1994). In short, he argues that because he did not control the transactions at issue, he is not a primary violator of § 10(b).

There is no aiding and abetting liability under § 10(b) of the Exchange Act, 15 U.S.C. § 78j(b). *See Central Bank of Denver,* 511 U.S. at ——, 114 S.Ct. at 1448. Accordingly, in the wake of *Central Bank,* courts are forced to "sharpen the often murky distinction between primary and derivative liability under § 10(b)." Louis Loss & Joel Seligman, *Fundamentals of Securities Regulation* 1107 (3d ed. 1995). This motion, therefore, presents the issue of whether Romano "employed a manipulative device" under the Exchange Act, when he executed trades at the direction of D'Onofrio, who in turn was directing and controlling trading in USE stock, and using undisclosed nominees to effect matched orders and wash sales. Because Romano did not "employ" a manipulative device, but merely executed elements of the manipulative trades of D'Onofrio, he cannot be held liable as a primary violator under the Exchange Act.

 "Manipulative" is "virtually a term of art when used in connection with securities markets." *Ernst & Ernst,* 425 U.S. at 199, 96 S.Ct. at 1383. "The term refers generally to practices, such as wash sales, matched orders, or rigged prices, that are intended to mislead investors by artificially affecting market activity." *Santa Fe Indus., Inc. v. Green,* 430 U.S. 462, 476, 97 S.Ct. 1292, 1302, 51 L.Ed.2d 480 (1977). As alleged in the Amended Complaint, Romano's involvement consisted of following directions from D'Onofrio in carrying out buy or sell orders. In addition, Romano bought and sold USE stock for the accounts of Castle. These activities do not constitute employing a manipulative device because Romano did not himself make wash sales, match orders, or use undisclosed nominees to artificially affect the price of securities. *See Ernst & Ernst,* 425 U.S. at 199, 96 S.Ct. at 1384 (manipulation "connotes intentional or willful conduct designed to deceive or defraud investors by controlling or artificially affecting the price of securities"); 9 Louis Loss & Joel Seligman, *Securities Regulation* 4018 (3d ed. 1992) (noting that scienter requirement may be redundant as applied to first and third clauses of Rule 10b–5 in light of words "defraud" and "deceit", but not as applied to second clause). Romano bought from and sold to parties who were unrelated to himself and Castle. Even if Romano knew that those parties were D'Onofrio and undisclosed nominees of D'Onofrio, and hence knew that D'Onofrio was manipulating USE stock, he did not himself manipulate USE stock because he did not himself have a manipulative purpose. *Cf. United States v. Mulheren,* 938 F.2d 364, 368 (2d Cir.1991) ("[W]e will assume, without deciding on this appeal, that an investor may lawfully be convicted under Rule 10b–5 where the purpose of the transaction is solely to affect the price of a security. The issue then becomes one of [the investor's] subjective intent."); Daniel R. Fischel & David J. Ross, *Should the Law Prohibit "Manipulation" in Financial Markets?,* 105 Harv. L.Rev. 503, 506 (1991) ("[T]here is no objective definition of manipulation—manipulative trades must be defined with respect to the intent of the trader."). Without employing "intentional or willful conduct designed to deceive ... investors by controlling or artificially affecting the price of securities," *see*

---

[1]. "'Wash' sales are transactions involving no change in beneficial ownership. 'Matched' orders are orders for the purchase/sale of a security that are entered with the knowledge that orders of substantially the same size, at substantially the same time and price, have been or will be entered by the same or different persons for the sale/purchase of such security." *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 205 n. 25, 96 S.Ct. 1375, 1386 n. 25, 47 L.Ed.2d 668 (1976).

*Ernst & Ernst,* 425 U.S. at 199, 96 S.Ct. at 1384, Romano cannot be liable for manipulation. The Amended Complaint, at most, alleges that D'Onofrio employed "intentional or willful conduct designed to deceive," and that, knowing this, Romano executed trades in USE stock. These allegations constitute nothing more than aiding and abetting manipulation, and hence are not actionable under § 10(b) of the Exchange Act. *See Central Bank,* 511 U.S. at ——, 114 S.Ct. at 1448.

The SEC stresses that D'Onofrio guaranteed to Romano that he would profit from trades in USE stock, by selling stock to Romano at a price lower than the price charged to the buyer (presumably a D'Onofrio nominee), and buying stock from Romano at a price higher than the price Romano had paid the seller. However, the fact that Romano had a motive to execute trades on D'Onofrio's direction does not render Romano a manipulator, it merely provides proof that Romano knew of D'Onofrio's manipulations. *Cf. Shields v. Citytrust Bancorp, Inc.,* 25 F.3d 1124, 1128 (2d Cir.1994) (pleading requirements of Fed.R.Civ.P. 9(b) satisfied where plaintiff alleges facts to show that defendant had both motive and opportunity to commit fraud). D'Onofrio's pricing of trades so as to guarantee Romano a profit does not render Romano's execution of trades, that he did not himself employ to manipulate, manipulative.

Because the Court finds that plaintiff has failed to state a claim in its third claim for relief, the Court need not address Romano's alternative ground for his motion with respect to the third claim for relief—that plaintiff has failed to plead with particularity as required by Fed.R.Civ.P. 9(b).

In addition, the Court denies leave to replead this claim, on the grounds that any repleading would be futile. *See In re American Express Co. Shareholder Litig.,* 39 F.3d 395, 402 (2d Cir.1994). Plaintiff has attempted to plead a manipulation claim against Romano twice, and it appears that the facts as alleged support no more than aiding and abetting manipulation by Romano. Repleading will not be able to recast this aiding and abetting as primary liability.

**II. *Romano's Motion to Dismiss Sixth Claim Based on Fed.R.Civ.P. 9(b)***

■ The sixth claim for relief alleges that Romano violated Rule 10b–6, 17 C.F.R. § 240.10b–6, by purchasing or bidding for a security before his participation in that security's distribution ceased. Romano moves to dismiss this claim for failure to satisfy the pleading requirements of Fed.R.Civ.P. 9(b).

The Amended Complaint has cured the defect of the Complaint, in that it has alleged that (a) Romano was a participant in the distribution, and (b) he purchased USE's stock (c) before his participation in the distribution ended. In particular, the Amended Complaint states that 46,000 units of Windfall Capital Corporation's ("Windfall") initial offering of 1,000,000 units were purchased by Castle nominees. *See* Amended Complaint ¶¶ 54, 57. Windfall subsequently merged with USE, and the surviving corporation was named USE. Thus the participation of Romano in the distribution of USE stock, as a registered representative of Castle, did not cease until the shares obtained by Castle nominees in the initial offering came to rest with the public. *See R.A. Holman & Co., Inc. v. S.E.C.,* 366 F.2d 446, 450 (2d Cir. 1966), *cert. denied,* 389 U.S. 991, 88 S.Ct. 473, 19 L.Ed.2d 482 (1967); *S.E.C. v. Kimmes,* 799 F.Supp. 852, 859 (N.D.Ill.1992). Accordingly, Romano's purchase of those shares into Castle's trading account between September 8, 1989 and September 11, 1989, *see* Amended Complaint ¶¶ 73, 135(c), violated Rule 10b–6, and Romano's scienter of the violation of Rule 10b–6 is adequately pleaded by Amended Complaint ¶ 74. The SEC has pleaded, with the requisite particularity, a violation of Rule 10b–6 by Romano.

**CONCLUSION**

For the reasons stated above, plaintiff's third claim for relief—that Romano violated § 10(b) of the Exchange Act and Rule 10b–5 promulgated thereunder by manipulating the market for USE stock—is DISMISSED for failure to state a claim. Defendant's motion to dismiss plaintiff's sixth claim for relief—that Romano violated § 10(b) of the Exchange Act and Rule 10b–6 promulgated

**172**

thereunder by purchasing or bidding on a security while he was a participant in the distribution of that security—is DENIED.

**SO ORDERED.**