

# ATTORNEY GENERAL OF TEXAS

### GREG ABBOTT

March 8, 2005

The Honorable Carole Keeton Strayhorn
Comptroller of Public Accounts
Post Office Box 13528
Austin, Texas 78711-3528

Opinion No. GA-0309

Re: Whether 15 U.S.C. § 77e, regulating the sale of unregistered securities, preempts section 74.401(a) of the Texas Property Code to the extent section 74.401(a) requires the comptroller to sell at public sale an unclaimed security that is not a registered, marketable security (RQ-0273-GA)

Dear Comptroller Strayhorn:

You ask whether 15 U.S.C. § 77e, regulating the sale of unregistered securities, preempts section 74.401(a) of the Texas Property Code to the extent section 74.401(a) requires the comptroller to sell at public sale an unclaimed security that is not a registered, marketable security.[1]

The comptroller receives abandoned or unclaimed property under section 74.301(a) of the Property Code. *See* TEX. PROP. CODE ANN. § 74.301(a) (Vernon Supp. 2004-05); *see also* Tex. Att'y Gen. Op. No. JC-0463 (2002) at 4, *modified on other grounds*, Tex. Att'y Gen. Op. No. GA-0061 (2003) at 8. Personal property generally is presumed abandoned if, for longer than three years: (1) the holder does not know the property owner's existence and location; and (2) according to the holder's knowledge and records, no person has asserted a claim to the property or has exercised an act of ownership. *See* TEX. PROP. CODE ANN. § 72.101(a) (Vernon Supp. 2004-05); *see also id.* § 72.101(b) (setting out the three-year period leading to a presumption of abandonment of stock or other intangible ownership interest in a business association); *id.* § 73.101(a) (stating that a financial institution may presume an account or a safe deposit box abandoned if the account or box has been inactive for five years or more and the owner's location is unknown). "Once property is presumed abandoned, the Comptroller . . . assumes responsibility for it and, in effect, steps into the absent owner's shoes." Tex. Att'y Gen. Op. No. JC-0463 (2002) at 4, *modified on other grounds*, Tex. Att'y Gen. Op. No. GA-0061 (2003) at 8; *see* TEX. PROP. CODE ANN. § 74.304(a) (Vernon Supp. 2004-05) (requiring the state to assume custody of property that has been delivered to the comptroller and to be responsible for the property's safekeeping).

---

[1]*See* Letter from Timothy Mashburn, General Counsel, Comptroller of Public Accounts, to Honorable Greg Abbott, Texas Attorney General (Sept. 8, 2004) (on file with Opinion Committee, *also available at* http://www.oag .state.tx.us) [hereinafter Request Letter].

Section 74.401 of the Property Code requires the comptroller generally to sell unclaimed personal property, excluding "money and marketable securities," at a public sale:

> Except [for property belonging to an out-of-state owner, property with minimal value, and military awards and decorations], the comptroller shall sell at public sale all personal property, other than money and marketable securities, delivered to the comptroller . . . . The comptroller shall conduct the sale in the city in this state that the comptroller determines affords the most favorable market for the particular property.

TEX. PROP. CODE ANN. § 74.401(a) (Vernon Supp. 2004-05). The comptroller must sell the property "to the highest bidder" unless the comptroller considers the highest bid "insufficient." *Id.* § 74.401(b). In that case, the comptroller may decline the bid and offer the property for public or private sale. *See id.* Proceeds from the sale are deposited into the state's general revenue fund. *See id.* § 74.601(b)(2).

You indicate that, on occasion, the comptroller receives "unclaimed, privately held shares of stock that would not be properly classified as 'marketable securities.'" Request Letter, *supra* note 1, at 1. These shares "are not registered with the Securities and Exchange Commission . . . and, therefore, cannot be sold on stock exchanges or over-the-counter markets." *Id.* at 2. You assume that these unregistered shares are not marketable securities, and therefore, you continue, section 74.401 appears to require the comptroller to sell them at public sale; yet you believe that an offer to sell these shares at public sale would, in most instances, violate 15 U.S.C. § 77e, part of the Securities Act of 1933. *See id.*; *see also* 15 U.S.C. § 77a (2000) (titling act). For purposes of this opinion, we adopt your representation that the shares about which you ask are not marketable securities under section 74.401.

Section 77e(a), 15 U.S.C., effectively prohibits the sale of unregistered securities:

> Unless a registration statement is in effect as to a security, it shall be unlawful for any person, directly or indirectly—
>
> (1) to make use of any means or instruments of transportation or communication in interstate commerce or of the mails to sell such security through the use or medium of any prospectus or otherwise; or
>
> (2) to carry or cause to be carried through the mails or in interstate commerce, by any means or instruments of transportation, any such security for the purpose of sale or for delivery after sale.

15 U.S.C. § 77e(a) (2000). Section 77d exempts from § 77e several kinds of transactions; you suggest that the only exemption that may be available to the comptroller is subsection (1), which

exempts "transactions by any person other than an issuer, underwriter, or dealer." *Id.* § 77d(1); *see* Request Letter, *supra* note 1, at 2. The term "person" is defined to include a government. *See* 15 U.S.C. § 77b(a)(2) (2000). The terms "issuer," "underwriter," and "dealer" are defined:

- An issuer is a "person who issues or proposes to issue [a] security." *Id.* § 77b(a)(4).

- An underwriter is a "person who has purchased from an issuer with a view to, or offers or sells for an issuer in connection with, the distribution of any security, or participates or has a direct or indirect participation in any such undertaking." *Id.* § 77b(a)(11); *see also id.* § 77b(a)(3) (defining "sale," "sell," "offer to sell," "offer for sale," and "offer").

- A dealer is a "person who engages . . . as agent, broker, or principal, in the business of offering, buying, selling, or otherwise dealing or trading in securities issued by another person." *Id.* § 77b(a)(12).

You assume that the comptroller is not an issuer or a dealer, but may be an underwriter. *See* Request Letter, *supra* note 1, at 2 ("the only relevant question is whether the Comptroller would be acting as an underwriter in reselling the securities at issue here").

We question whether the comptroller could be considered an underwriter in the circumstances you describe. As the term's definition suggests, an underwriter is "one who purchases stock from [an] issuer with an intent to resell to the public" in connection with a security distribution. *Quinn & Co. v. S.E.C.*, 452 F.2d 943, 946 (10th Cir. 1971), *cert. denied*, 406 U.S. 957 (1972); *cf.* 15 U.S.C. § 77b(a)(11) (2000). Here, the comptroller, in receiving the property under state escheat laws, does not appear to have purchased stock from an issuer. In addition, we assume that the number of escheated shares in a particular company is typically small. *See Quinn & Co.*, 452 F.2d at 946 (indicating that whether a sale is a distribution depends in part on the number of shares sold).

Nor could the comptroller be said to have obtained the stock "with a view to" distributing it. 15 U.S.C. § 77b(a)(11) (2000). An underwriter participates in a "distribution" of a security. *Id.*; *see Ackerberg v. Johnson*, 892 F.2d 1328, 1336 (8th Cir. 1989) (stating that the term "underwriter" is "generally defined in close connection with the definition and meaning of 'distribution'"); *S.E.C. v. Van Horn*, 371 F.2d 181, 188 (7th Cir. 1966) (stating that the statutory definition of "underwriter" "specifically covers every person who participates in a distribution of securities"). While relevant federal law does not define the term "distribution," *see* 15 U.S.C. § 77b (2000), section 230.140 of the Securities and Exchange Commission's corresponding regulations in 17 C.F.R. defines the term "for certain transactions":

> A person, the chief part of whose business consists of the
> purchase of the securities of one issuer, or of two or more affiliated

> issuers, and the sale of its own securities . . . to furnish the proceeds with which to acquire the securities of such issuer or affiliated issuers, is to be regarded as engaged in the distribution of the securities of such issuer or affiliated issuers within the meaning of section 2(11) of the Act.

17 C.F.R. § 230.140 (2004); *see R.A. Holman & Co. v. S.E.C.*, 366 F.2d 446, 449 (2d Cir. 1966) (indicating that the term "distribution" denotes "'the . . . process by which in the course of a public offering [a] block of securities is dispersed and ultimately comes to rest in the hands of the investing public'") (quoting *Lewisohn Copper Corp.*, 38 S.E.C. 226, 234 (1958)), *cert. denied*, 389 U.S. 991 (1967); *see also Budget Rent-A-Car Sys., Inc. v. Hirsch*, 810 F. Supp. 1253, 1255-57 (S.D. Fla. 1992) (suggesting that "distribution" is synonymous with "initial offerings" or other sales of large blocks of a particular corporation's stock); *Ackerberg*, 892 F.2d at 1335 n.6 (stating that the word "distribution" has been construed to mean "the equivalent of a 'public offering'").

The "chief part" of the comptroller's job is not the purchase and sale of securities, as the definition of "distribution" requires. *See* Tex. Gov't Code Ann. § 403.011(a) (Vernon 2005) (listing the comptroller's general powers). In particular, the comptroller is the state's "sole accounting officer" and must "supervise . . . the state's fiscal concerns and manage those concerns." *Id.* § 403.011(a)(3). She has extensive duties related to collecting, keeping, and accounting for state funds. *See id.* § 403.011(a)(2), (4)-(10). She also is responsible for auditing claims against the state and for "draw[ing] warrants on the treasury for payment of all money required by law to be paid from the treasury on warrants drawn by the comptroller." *Id.* § 403.011(a)(12)-(14), (17).

We accordingly conclude that the comptroller generally is not an underwriter for purposes of 15 U.S.C. § 77e(a), except perhaps in specific fact situations that we do not address here.[2] *See Neuwirth Inv. Fund, Ltd. v. Swanton*, 422 F. Supp. 1187, 1195 (S.D.N.Y. 1975) (stating that the determination of whether one is an underwriter requires an analysis of various facts). Assuming that the comptroller is not an underwriter, she need not comply with federal securities laws in disposing of the securities. Consequently, the comptroller must comply with section 74.401(a), requiring her to sell the unmarketable securities at public sale.

---

[2] If specific facts are present, such as the escheat of a large number of unclaimed shares in a single company, we suggest that the comptroller contact the federal Securities and Exchange Commission to determine whether federal requirements apply.

## S U M M A R Y

With respect to disposing of unclaimed, unmarketable securities that have escheated to the state, which the comptroller must sell under Texas Property Code section 74.401(a), the comptroller generally is not an underwriter for purposes of 15 U.S.C. § 77e(a). Accordingly, she must sell the securities at public sale in compliance with Property Code section 74.401(a).

Very truly yours,

GREG ABBOTT
Attorney General of Texas

BARRY R. MCBEE
First Assistant Attorney General

DON R. WILLETT
Deputy Attorney General for Legal Counsel

NANCY S. FULLER
Chair, Opinion Committee

Kymberly K. Oltrogge
Assistant Attorney General, Opinion Committee